Good morning, your honors. May it please the court, my name is Brooks Holland, counsel for Donato Valle Vega. Your honors, Rule 24 of the Federal Rules of Criminal Procedure establishes a national consensus by the judiciary and the Congress on much more than just how to impanel a constitutionally unbiased jury. Rule 24 establishes a framework for ensuring consistent, coherent, and reviewable jury selection procedures from district to district. And more fundamentally, Rule 24 ensures that the parties may exercise their substantial right to peremptory challenges that are meaningfully exercised consistent with the selection process both for trial and as jurors. In this case... Well, you know, the district court may... It looks like the district court, you know, didn't comply literally with Rule 24. Correct. And the government... Where's the prejudice? I mean, there was never any objection that any of the... that because he was unable to exercise an extra peremptory that somebody got on the jury that they felt was... that counsel felt was biased. Correct, your honor. There was no objection... Where's the prejudice? I would identify several forms of prejudice that resulted from the district court's errors, which the government appears to concede. So the issue before the court truly is harmless error under Rule 52A. And the prejudice is multiple in this case, your honor, because of the unique combined errors by the district court. The district court combined the selection of both trial jurors and alternate jurors into one pool. Right, I understand. And also expressly denied defense counsel the extra peremptory challenge to which he was entitled under Rule 24C. In that circumstance, defense counsel, one, lost truly that extra peremptory challenge, which defense counsel requested. Defense counsel did object to this procedure, including calling to the court's attention that he was entitled to an extra peremptory challenge. But we're kind of agreeing with you. He didn't do it conventionally. Maybe even if it was an error. But what authority would allow us to hold that the district court's error in jury selection require reversal in this case? You know, what is the... You know, has any other court held that? No other court has expressly held it because no other court has expressly dealt with the situation where the error was preserved as well as it was preserved in this case. The Sixth Circuit in two cases from the 1990s and much more recently, the Broadus case and the Delgado case, in those circumstances, the Sixth Circuit held that this kind of combined error where you combine the selection of alternate and trial jurors and deny defense counsel the extra peremptory for alternate jurors could result in reversal if it was a preserved error, not subject to plain error review. So you also have to show some juror bias in that situation, too? Well, the government contends that the exclusive test for prejudice is proof of actual juror bias, which would be a requirement that the defense establish essentially a constitutional violation under the Sixth Amendment to establish prejudice for denial of a Rule 24 peremptory challenge. Was there any... Did you raise with the district judge that, you know, judge, we'd like to strike one of these... We believe we have one extra strike. We'd like to use it to strike juror number whatever. The district court cut defense counsel off before that colloquy even could happen. But there was an objection. Correct. But the objection wasn't, I object, Your Honor. I would like to strike juror number whatever. Correct. There is no directed challenge for cause. Or even for... You would have exercised it properly if you'd been allowed to exercise it. That's correct. That record is not made. At that point, Your Honor... I just... Where is the prejudice? That's what I can't... I don't quite understand. The most fundamental prejudice is that defense counsel, looking at this panel of prospective jurors, is being asked to select 14 jurors, trial jurors and two alternates, without any awareness of which jurors are going to be trial jurors or alternate jurors. So defense counsel is blind in using those peremptory challenges to whether he or she... Or whether he was using them against prospective trial jurors or alternate jurors. The court's objective was to make sure that all jurors paid attention throughout the trial. Because there's a concern that, well, I'm just an alternate juror. I'm not really going to... I may not get to go... There was some logic to what the district court did. It's just not the rule that we've adopted in Rule 24. So it looks like it's a technical violation unless there's some allegation of prejudice. So if you'd... The last peremptory could only have been used against one of the alternates. Is that correct? No, not really. Actually, it's kind of a six-of-one, half-dozen-of-another circumstance, Your Honor, because defense counsel, not knowing whether he was exercising peremptory challenges against prospective trial jurors or alternate jurors, could be seen as having lost the peremptory towards alternates, or really had to borrow against his trial juror peremptory challenges to strike potential alternate jurors. The record, because the judge combined the selection of trial and alternate... Okay, but the trial lawyer used all the peremptories, right? Correct. All ten were used. Okay. And how many did the prosecutor have in that? The prosecution was given six and defense ten. So, but I think like what Judge Pius is saying, someone didn't stand up and say, if I had one more, I would like to... These are the issues that concern me with the veneer that I'm looking at. I can't tell you anything for cause, but say juror number three, I don't really care for juror number three, because juror number three mentioned that she's got some law enforcement in her family. And I don't... If given my druthers, I would excuse that person if I had another peremptory. There's nothing like that in the record, right? That is correct, Your Honor. We do have a very clear objection in the record to the loss of the court. Well, I get that, and that's why we're talking about it. That's not why... That's why we're not telling you, I don't want to hear anything about it. I understand, Your Honor. Thank you. I think what you're suggesting is the government's position here, which is that the defense should have the burden of articulating, at the time of the error, essentially a challenge for cause to a juror, or articulating grounds for a peremptory challenge to a specific juror. When the court has already denied counsel the ability to exercise that peremptory challenge. It doesn't have to be for cause. I mean, you... But you... But it... It ought to be some kind of a challenge that says, I'm not going to want juror number eight. And you denied me... You denied me that, and if I did, I would use it. As opposed to saying, I will object to the general... I object to the general procedure, and I may or may not use the peremptory. That record was not made. You're correct, Your Honor. Your time is running down. Did you want to address any of the other issues that you've raised? Well, if I could just respond to Judge Bidey's question very briefly, Your Honor. I think the concern here is, at that point, we're shifting the burden, putting the burden on defense counsel to make a further record to remedy or address an error that already happened. Defense counsel very clearly requested, at the beginning of jury selection, an extra peremptory challenge, and also objected to the combined blind lottery system for selecting jurors. To accept your argument, though, we would have to find it was structural error, correct? Not necessarily structural error, Your Honor. Because it was preserved, the government has the burden of demonstrating that the error was harmless and did not prejudice the defense. In the Sixth Circuit, as well as the First Circuit, in the Gonzales-Melendez case, both have... So you're not arguing structural error. You're still arguing that harmless error is the appropriate... Well, it could be structural error, because Rule 24 is so fundamental as a policy statement, to how both the judiciary and Congress want trial procedures to occur. There's nothing in the Constitution that gives you the right to have a peremptory. Correct. They could do away with peremptory. And no court has ever held that it's structural error. Some courts have held that it's not structural error. Correct. You're swimming upstream if you try to make a structural error. Correct. And so I'm not hinging our argument on a structural error standard. I'm also arguing that, as a matter of policy, Rule 24 sets a very clear procedure, and that procedure is designed not only to ensure consistent and reviewable jury selection processes, and we have that problem here, that the record is very difficult to review because of the procedure the district court adopted, but also to protect the party's ability meaningfully to exercise peremptory challenges. Well, but if we accept... If you want to put it all on the prosecutor, it's a little bit like we require someone to state what their objection is, and so a district judge has an opportunity to respond to it, correct it, or, you know, that... And in this situation, when all you say is you object, and you don't articulate the things that Judge Bybee's saying, there can't be any discussion. Then... So it's just you get to come here and say, well, the procedure wasn't followed, and therefore, how do you do a harmless error analysis if you don't put someone on notice of what you think the harm is? We wouldn't need to do the harmless error analysis if the district court simply followed Rule 24. What we do not have here is one of these circumstances, like in most of the authorities, dealing with this harmless error question post-Rivera and Lindsey, where district court judges make a good-faith but erroneous judgment on a reverse Batson challenge. And in Rivera, the Supreme Court expressed concern about deterring judges and prosecutors from raising and engaging those Batson inquiries and did not want to have something akin to automatic reversal in those circumstances, a windfall to the defense. Here, the district court, read in context, pretty clearly was just adopting its own preferred policy for how to empanel a jury, including in reducing... Is this jury selection method unique to Judge Layton? I'm sorry? Is this method of selecting a jury, is that unique, is that his own preferred practice, or is that custom throughout the Western District? I cannot speak from personal experience to the practice of the Western District judges. Anecdotally, I've heard that it is not the only court in which this practice may occur. The case law makes pretty clear that some district court judges, at least, are combining the selection of alternate and trial jurors. I would suggest in part because the case law makes clear that most of these cases are going to be harmless error. Here, we have a judge who, for the court's own preferred model of jury selection, did the blind lottery system and deliberately denied defense counsel an extra peremptory when defense counsel said, I'm entitled to it under Rule 24, suggesting that the court was just adopting its own preferred model of jury selection. It may have been a model that would keep the alternate jurors, ultimately, more attentive during the trial, but that's not the policy that was adopted by the judiciary and the Congress in Rule 24. Your time is up. You're running down. Do you want to save some time for rebuttal? I would like to save two minutes, Your Honor, for rebuttal. In addition to the jury selection issue, Your Honor, we have the issue of the district court denying the defense of duress as an instruction to the jury, notwithstanding a very detailed record on duress that was established by Mr. Vallevega's own testimony. Okay, but he didn't do a prima facie. He didn't do that beforehand, do a prima facie showing for duress, right? Correct. So it was during the trial, and the district judge seemed, I mean, this was an unusual case in certain ways that because this was a federal informant that then also got caught doing some of his own work. And so the district judge seemed to be concerned that if he was able to meet with the agent several times in public, why doesn't this support the district court's determination that he had a reasonable opportunity to escape? Because he was playing both sides. I mean, he was meeting with the agent saying, I'm an informant, but then he was also dealing drugs. Correct. And that view is certainly the government's theory from this case, which they would have been perfectly entitled to argue to the jury. The question is whether the district court correctly determined as a matter of law that Mr. Vallevega's testimony failed to establish the elements of the duress defense. And some unique circumstances here address the concerns that Your Honor raised. One, in this case, unlike the authority cited by the government, Mr. Vallevega testified to continuous and close proximity by other members of the drug organization, including in Washington State, at his business and at his home, following a direct threat by the leader of that organization that someone would die if something happened to the drugs. Plus, Mr. Vallevega testified to a corroborated incident by the agents themselves of another individual attempting to harm Mr. Vallevega when Mr. Vallevega was outed as an informant. And Mr. Vallevega testified, I did not trust the agents to protect me if I did come to them with this kind of information when I have members of the organization residing and working in my home and in my business here in Washington State. Your Honor, if I may then, I'll reserve the bulk of my time. Thank you very much. Your Honor, may it please, Your Honors, may it please the Court, Matthew Thomas, on behalf of the United States of America. The question for the Court today is whether or not to affirm the judgment and conviction in this case. I'd like to address a question that Your Honor, Judge Callahan, had about case law. There's a, there's a case, it's a civil case, Alaska-Renicar. But the reasoning in it is very close to what we have here today. In that case, the Court held that the right to peremptory challenges in civil cases exists by virtue of the federal rules of civil procedure. And the Court said that the erroneous denial of a challenge is therefore subject to Civil Rule 61, which is very similar. Think, though, that if the judge wants to follow this procedure and keep people awake and do the alternates together, don't you think the judge should give them an extra challenge? Yes. Well, they were entitled to it. They were entitled to an extra challenge under Rule 24. Yes. It wasn't a matter of his generosity. They were entitled to an extra challenge. So what was, what, how do you justify, what's the judge's rationale on that? Well, his rationale that he stated was he likes to keep all the jurors alert, and therefore he has to... Well, but you just give enough challenges. You can keep them all alert, but just give everyone... I mean, wouldn't you squawk if the judge said, I'm giving 10 to the defense, but you get 5? Well... And you know you're entitled to 6? We only use 5 of our peremptory challenges. Your Honor... Well, you never know how that's going to go, though. I've handed up to the court, through the in-court deputy, a summary of the jury selection. And one of the points I wanted to make was, if you look at this list, the court excused 6 jurors for cause. The defendant requested 2 of those and joined in the other excusals for cause. And then the court gave the defendant 6 peremptories and the government, or rather 10, and the government 6. And so by doing the math, you can see that beyond jury number 36, 37 through 41, mathematically you would never make it on to the jury. And yet, toward the end of his selection, the defendant used peremptory number 9 on juror number 37. He wasted a peremptory challenge. Well... You're doing blind strikes, though, aren't you? Yes. So, you don't really know. I see your point. Isn't that correct? You don't know what the other side... As I understood, what he did is each side had to give him a list of strikes. And if you both happened to hit the same... asked to strike the same juror, that's too bad. And that happened in two instances, Your Honor. However... I thought that was a rather unique application of his... I mean, I find that a little bit problematic, but that's not... Well, isn't just getting tricky with jury selection kind of risky business from the standpoint? Because then, you know, if you're wrong out the gate, then you waste all the time trying a case and someone is convicted. So, why do we want to, you know... Because you would have been entitled to an extra peremptory too, right? Yes. Yes, Your Honor. You were. We were. I remember all this from my days as a district judge. Well, and I asked appellant's counsel saying, well, why didn't someone put the judge on notice that there were problematic people? But I was a trial lawyer and tried a lot of jury trials. I didn't want to tell everyone how I like to use my peremptories, because a lot of times it says a lot about how you try a case or your strategy. And so, you know, maybe you like teachers. Maybe you like people that have police officers in their family. Maybe you don't like this or don't like that or you, you know... I don't think most prosecutors or defense counsel want to overly disclose their strategies on how they deal, interplay with jurors. So, is that unfair to ask the defense to have to do that? It's a procedural right, Your Honor. It is. You know, there's a whole debate about peremptory challenges and how they're used. But it is a procedural right and not a constitutional right. And in this case, the defendant has not alleged that this jury was biased. He, when asked, had no further challenges for cause. And in fact, going back to Judge Pipe... Wouldn't it just be better for us if people followed procedure and then we don't even have to talk about this? Well, I think that Judge Layton was, you know... What he was trying to do is achieve a fair result by treating the alternates in the same manner. He may have been trying to obtain a fair result. And I think they've got a... The defendant has a hard row to hoe here, so to speak. But really, this is all about efficiency. It's really what's going on here. It's a quick way of selecting a jury. Rather than using alternate strikes, you do a blind strike system like this. You just number the jurors and you select 14. At the end, good reason to not designate the two. And at the end, you draw randomly from the 14 and you've got your two alternates. It's all over. It's just very efficient. It's really what's going on. It is. And, Your Honor, you had asked about the numbering. The one thing about it is, beyond 37 and beyond, those jurors could never get on to the jury. And the reason for that is because there were only six challenges for cause. Oh, I understand. And so, even though the defendant wasted a peremptory challenge, he's asking this Court to overturn the verdict and order a new trial. Let's talk about duress, then. Okay. What should we make of the fact that Mr. Vega testified that the Apodacas threatened to kill members of his family before the trial? And he also claimed that his persecutors were watching him in Centralia and his family in Mexico. So, doesn't that go to that he maybe didn't have a reasonable opportunity to escape? The test is immediate threat of death or serious bodily injury. And in going over the record of the defendant's testimony, really what we have, that threat is really a platitude. What Salome Flores Apodaca said to the defendant, he was telling him a story about a cousin who had been killed by the cartel for giving information to another cartel. And he said, if you work in an organization like that, your mouth can actually kill you. That's a platitude. That's not an immediate threat against the defendant. Well, apparently the district judge just thought, made comments that I don't think he'd ever seen so much methamphetamine. And so, he obviously was of the view that Mr. Vega was a pretty big drug dealer himself. And so, somehow from that, that he couldn't really be afraid. And he was, you know, he was cutting it both ways. He was an informant, he was a big drug dealer. And so, therefore, he couldn't be under duress. Is that necessary? I mean, couldn't someone still be under duress and have all of those facts? Yes, he found, Judge Layton found that he was wholly a volunteer, in his words, from the beginning of the process to the end. And this is inconsistent with the defense of duress. In answer to your question, Your Honor. Why not let the jury decide that? Well, he had not made out a prima facie case. Not only was the threat not immediate, he did not go to the agents when he had the chance. And to explain, these drugs arrived by his testimony toward the end of June or at the latest July 2nd of 2010. They were not discovered by the agents at his car lot until September 2nd of 2010. During that time, he met with Special Agent Boyd on at least seven occasions. Either met with him in person or spoke to him on the phone. And in his testimony, he said they spoke daily. During that entire time, Your Honors, he never told them that he had these drugs at his car lot. He did not take the opportunity to explain, hey, I'm in this situation, you need to help me out. Now, the defendant brings up Noel Velazquez, that case. And he says, well, he didn't like the way the federal agents handled that case. But the record shows that on the night that the defendant and Noel Velazquez got into a dispute in Centralia, Washington, the defendant called Special Agent Boyd. Boyd called an agent with the DEA, Aaron Jewell, and asked him to speak to the defendant. He went right away, met with him, he had Noel Velazquez arrested. Noel Velazquez was prosecuted in U.S. District Court and went to prison. And so, the agents did take that seriously and they handled it appropriately. Your Honors, if you have, do you have any... There's one other argument that Defense Counsel raised in their opening brief, and that was the sentencing issue. That the judge didn't give an adequate explanation with respect to the basis under the 3553A factors. Your Honor, in Rita v. United States, it is enough, the district court must only set forth enough of a record to satisfy this court that it has considered the party's arguments and has a reasoned basis for exercising its own legal decision-making authority. But we've also said that encompasses an explanation. Yes, Your Honor. And in this case, when Judge Layton came out, he told the parties what he had reviewed in preparation for the sentencing. He'd reviewed the memorandums and attachments and the pre-sentence report. And then, he engaged in a colloquy with counsel about the various adjustments. And at the end, as Judge Callahan has pointed out, he spoke about the seriousness of the offense. That is adequate. And he can rely on the PSR in coming to a sentence. But he never said what a below-guideline sentence was, right? He didn't, but he did give the defendant half of the guideline range. His guideline range was 360 months to life. And he gave him a sentence of 180 months. That was the two minimums run together. Yes. So, it was a reasonable sentence, very reasonable. And the PSR recommended 168 months, right? Let's see. And the government recommended 168. I believe we were, and the defense recommended 120. And he could have gone down to 120 by running the charges concurrent. Right. So, in your view, just the judge's emphasis on the quantity and nature of the drug was sufficient. He spoke about the 3553 factor. I don't know if he mentioned the statute, but he talked about the seriousness of the offense. Okay. Your Honors, unless you have any further questions, thank you. No, thank you. Thank you. Your Honors, the government has cited the Alaska Rent-A-Car case from the circuit on the question of harmless error. And at first blush, that case would look to support the government's position. Particularly because in that case, the objection was made and the error was preserved. But there are two unique circumstances to that case that distinguish this case from the holding of that case. First, the judge in that case made the error on a Batson challenge. The judge in good faith was attempting to deal with Batson issues and was not arbitrarily denying a party a peremptory challenge to which the party was entitled under Rule 24. The objection was to the loss of the peremptory against a particular juror on Batson grounds. Second, in that case, the trial judge offered to allow the party to use that lost peremptory challenge against another juror. So the loss was only as to a particular juror whom the party wanted to strike. But not a loss of the number of peremptory challenges required by Rule 24. And the party in that case chose not to use the judge's offer to strike an additional juror. Here, the district court withheld a peremptory challenge to which the party was entitled under Rule 24. The government characterizes the right as purely procedural. And that, therefore, we should have to show some more substantive harm along the lines of a biased juror to obtain reversal. And that characterization might be accurate if we were dealing only with the blind lottery system, which would be an adjustment to the procedures of Rule 24. Here, though, Mr. Vallevega lost a peremptory challenge. This court recently, in the Yepez case, characterized the peremptory challenge right as a substantial right, one of the most important tools in the arsenals of a trial lawyer to secure a fair trial. And in this case, that right was lost to Mr. Vallevega. Thank you. Okay. Thank you, counsel. Thank you. We appreciate your arguments, counsel. Matter submitted at this time.
judges: Paez, Bybee, Callahan